**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

FILED

00 DEC -8 PM 3: 1

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| COY HOLDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Civil Action No. CV-00-S-0256-NE |
| | ) |
| WILLIAM HENDERSON, United | ) |
| States Postmaster, | ) |
| | ) |
| Defendant. | ) |

ENTERED

DEC - 8 2000

**MEMORANDUM OPINION**

Plaintiff contends that he was subjected to unlawful discrimination by the United States Postal Service when his employment was terminated, allegedly in retaliation for his act of filing a race discrimination complaint with the Postal Service's Equal Employment Opportunity Office. He further alleges that defendant refused to comply in good faith with a final agency decision entered on April 19, 1999, which required defendant to reinstate plaintiff to his previous position. Defendant asserts in response that plaintiff failed to exhaust administrative remedies, and his second amended complaint accordingly is due to be dismissed for lack of subject matter jurisdiction or, alternatively, for failure to state a claim upon which relief can be granted. Because matters outside the pleadings have been presented to, and considered by the court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all



parties [have been] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Rule 12(b), Fed. R. Civ. P.; *see also, e.g., Arnold v. United States Postal Service*, 649 F. Supp. 676, 678 (D. D.C. 1986) (Ritchey, J.).

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (emphasis supplied).

The party asking for summary judgment always bears the initial responsibility of informing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.* at 323, 106 S.Ct. at 2553; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Jeffery*

2

*v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*) ("A moving party discharges its burden on a motion for summary judgment by 'showing' or 'pointing out' to the Court that there is an absence of evidence to support the non-moving party's case."). Rule 56 permits the moving party to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

When the moving party has discharged its burden, the non-moving party cannot rest upon the pleadings; rather, Fed. R. Civ. P. 56(e) requires the party opposing summary judgment to go beyond the pleadings, and to demonstrate by affidavit or other appropriate means that there is a genuine issue of material fact for trial.[1] *See also Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Jeffery*, 64 F.3d at 593-94.

The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("Only disputes over facts that might affect the outcome of the suit under the

---

[1] Federal Rule of Civil Procedure 56(e) provides, in pertinent part, that:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

governing law will properly preclude the entry of summary judgment.
Factual disputes that are irrelevant and unnecessary will not be
counted.").

"[T]he dispute about a material fact is 'genuine' ... if the
evidence is such that a reasonable jury could return a verdict for
the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510; *see also*
*Jeffery*, 64 F.3d at 594.  Evidence that is merely colorable, *see*
*Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988),
conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir.
1989),[2] conjectural, or "not significantly probative," *Anderson*,
477 U.S. at 249, 106 S.Ct. at 2511, will not create a "genuine"
issue of material fact.  Further, the nonmoving party must put
forth more than a "mere 'scintilla'" of evidence; instead, "there
must be enough of a showing that the jury could reasonably find for
that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.
1990).

In deciding whether the moving party has met its burden, the
court may not weigh the evidence nor make credibility
determinations; rather, "the evidence of the non-movant is to be
believed." *United States v. Four Parcels of Real Property*, 941

---

[2] *See also* Broadway v. City of Montgomery, 530 F.2d 657, 660 (5th Cir.
1976) (holding that affidavit containing "nothing more than a recital of
unsupported allegations, conclusory in nature," is not sufficient to avoid
summary judgment) (*citing* Benton-Volvo-Metairie, Inc. v. Volvo Southwest, Inc.,
479 F.2d 135 (5th Cir. 1973), and Bros, Inc. v. W.E. Grace Manufacturing Co., 261
F.2d 428 (5th Cir. 1958)).

F.2d 1428, 1437 (11th Cir. 1991) (*en banc*) (quoting *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513).  The court is obligated to draw all inferences from the evidence presented in the light most favorable to the nonmoving party and, also, to resolve all reasonable doubts in that party's favor.  *See, e.g., Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993); *Four Parcels*, 941 F.2d at 1437; *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).  Inferences in favor of the non-moving party are not unqualified, however.  "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment."  *Resolution Trust Corporation v. Dunmar Corporation*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment.  *See Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988).  The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

## II. SUMMARY OF FACTS

Coy Holden was hired by the United States Postal Service as a

probationary City Letter Carrier (PS-05 grade level) on October 15, 1994.  Pursuant to policy, plaintiff was required to successfully complete a 90-day probationary period before he could be considered for permanent employment.  On December 29, 1994, however, plaintiff received a memorandum from his supervisor stating that his employment would be terminated the following day for deficiencies in the performance of his duties:  *i.e.*, failure to meet work performance expectations; failure to carry routes in prescribed times; failure to accomplish work in an efficient and timely manner; and failure to complete work assignments without unnecessary supervision.[3]

Plaintiff filed a complaint with the Postal Service Equal Employment Opportunity Office on May 24, 1995.  He charged that his termination was unlawfully based upon his race (African-American), sex,[4] and disparate application of performance standards.  He claimed that his poor performance actually was due to his

---

[3] *See* defendant's evidentiary submission (doc. no. 21), Exhibit 2.

[4] Plaintiff's EEO charge claimed that Tammy Hill, a female temporary employee, had engaged in inappropriate sexual relations with her Postal Service supervisors:

> I overheard conversations in the mail facility that indicated that if the probationary employees were hired permanently, Ms. Hill's work hours would be greatly reduced.  I also overheard conversations in the mail facility that Ms. Hill frequently received preferential treatment by the supervisors.  I allege sexual discrimination by facility supervisors motivated by their desire and intention to retain Ms. Hill, and I contend that I was terminated so that management could afford her more hours in exchange for sexual favors.

*Id.*, Exhibit 3.

6

supervisor's failure to instruct him on proper carrying procedures, and, failure to provide him the codes necessary to access mail receptacles.  These omissions, plaintiff alleged, led to the appearance that his work performance was deficient.  Plaintiff also observed that all Caucasian male probationary employees had successfully completed their probationary period, while the only two probationary employees of African-American heritage were terminated under the pretext of poor performance.[5]  The EEO office accepted plaintiff's complaint on August 15, 1995, and initiated an investigation.  Following plaintiff's receipt of the report of investigation on November 7, 1995, he requested a hearing before an EEO Administrative Law Judge (ALJ).

A hearing was conducted on November 8, 1998.[6]  The ALJ concluded that "the complainant has proven that the reasons given by the Agency for his termination ... are a pretext to hide or mask, discrimination,"[7] and recommended that plaintiff be reinstated "to the position of City Carrier, PS-05, with an award of back pay (interest) ... along with any, and all emoluments that would have accrued absent the discrimination (i.e. credit for leave, etc.)."  The ALJ also recommended that plaintiff be awarded

---

[5] *Id.*, Exhibit 3 (EEO charge).

[6] Neither party has disclosed the reasons for the long delay between plaintiff's receipt of the report of the investigation and the date of plaintiff's hearing with the ALJ.

[7] *Id.*, Exhibit 1 (Administrative Judge's findings and conclusions), at 6.

reasonable attorneys' fees, and that records pertaining to his termination be expunged.[8]

The Postal Service issued a final agency decision on April 19, 1999,[9] basically concurring with the ALJ's report and recommendation:

> You will be reinstated to the position of City Carrier, PS-05, with an award of backpay (with interest), pursuant to 29 C.F.R. 1614.501, retroactive to the date that you were removed, along with all other benefits to which you would have been entitled absent the discrimination.
>
> You will be required to satisfactorily complete a probationary period under management other than the supervisors cited in this complaint.
>
> All agency records will be expunged of any information relating to your termination.
>
> You will be awarded reasonable attorney fees pursuant to 29 C.F.R. § 1614.501(5)(E).[[10]]

The final agency decision also notified plaintiff of his rights to appeal:

> If you are dissatisfied with this final agency decision, you may file a civil action in an appropriate U.S. District Court within 90 calendar days of your receipt of this decision.
>
> . . .
>
> In lieu of filing a civil action, you may appeal to the Equal Employment Opportunity Commission within 30 calendar days of the date of your receipt of this decision.

---

[8] *Id.* at 7-8.

[9] *Id.*, Exhibit 2 (final agency decision).

[10] *Id.* (emphasis supplied).

8

. . .

> If you file an appeal with the EEOC's Office of Federal Operations, you may thereafter file a civil action in an appropriate U.S. District Court within 90 calendar days of your receipt of the decision from the Office of Federal Operations. A civil action may also be filed after 180 calendar days of your appeal to the EEOC, if you have not received a final decision on your appeal.[11]

Plaintiff's attorney responded to the final agency decision by means of a letter dated May 5, 1999, stating:  "I have discussed this matter with Mr. Holden — he does not intend to appeal and would like to report to work as soon as possible."[12]

Defendant mailed plaintiff a copy of Postal Service Form 8038, an "Employee Statement to Recover Back Pay," on May 21, 1999. Instructions accompanying the form advised plaintiff to complete the form and return it to defendant, for the purpose of calculating the amount of back pay due.[13]  Plaintiff's attorney responded by means of a letter dated June 15, 1999, questioning defendant's need for the information elicited by the form, and expressing her concern that some of the information sought would improperly reflect plaintiff's unlawful termination — thus conflicting with the final agency decision providing that "[a]ll agency records will be expunged of any information relating to [plaintiff's]

---

[11] *Id.*

[12] *Id.*, Exhibit 6 (Pearson letter).

[13] *Id.*, Exhibit 7 (Form 8038).

9

termination."[14]

Defendant points out that Postal Service Form 8038 requires the employee's signature and a certification of the truthfulness of the responses, and that plaintiff failed to fully complete, sign, or certify it.

Despite the fact that the parties continued to debate the issue of back pay and the propriety of Form 8038, plaintiff finally returned to duty with defendant on October 12, 1999,[15] in the capacity of a part-time, flexible, PS-05 grade, probationary City Letter Carrier.  Plaintiff now contends that this designation was inconsistent with the final agency decision.  Specifically, plaintiff asserts that he understood the only purpose of the "probationary" status was to provide him with necessary training, following which he believed that he would be made a permanent city letter carrier.[16]

During plaintiff's reinstatement, the parties continued their dispute regarding the manner in which plaintiff's back pay was to be calculated.[17]  On October 27, 1999, defendant again mailed

---

[14] *Id.*, Exhibit 8 (Pearson letter).

[15] Second amended complaint (doc. no. 18), ¶ 6.

[16] *Id.* at ¶¶ 2-4

[17] Plaintiff argued that the proper way to calculate his loss was to compare the wages earned by a similarly situated employee, Mr. R. Grotto (a Caucasian), who was hired by the post office at the same time as plaintiff, but retained beyond his probationary period.  Plaintiff contended that the best way to measure his loss was to look to Grotto's, the comparator's, gain during plaintiff's back pay period.  Defendant, meanwhile, argued that according to Postal Service regulations, plaintiff's back pay period would be limited to

plaintiff a copy of Form 8038 for completion, as well as Form 8039:

a Back Pay Decision/Settlement Worksheet.  Form 8039 requested the

dates of plaintiff's employment after being terminated from

defendant's employ in 1994, and the amount of any attorneys' fees

incurred by plaintiff.  By December 15, 1999, plaintiff still had

not returned either Form 8038 or Form 8039.

On December 30, 1999, defendant again terminated plaintiff's

employment for unsatisfactory performance of duties during the

probationary period.  Plaintiff contends that this action was "in

retaliation of [his] prior EEO activity."[18]  He initiated a second

EEO complaint process on January 27, 2000, by completing an EEO

form entitled "Information on Precomplaint," on which plaintiff

wrote "I believe ... my supervisor did not want me as an employee

because she was aware of my prior EEO activity."[19]

Plaintiff filed a formal administrative complaint with the EEO

Complaints Processing office, Alabama District, on March 9, 2000.

One month before that date, however, he had initiated the present

action in this court, asserting:

> This Complaint is an appeal, enforcement and damages
> action based upon an agency decision finding the United
> States Postal Service terminated plaintiff because of his
> race in violation of Title VII of the Civil Rights Act
> and on the agency's bad faith and failure and refusal to

---

calculations based upon his hours during his original probationary period.

[18] Declaration of plaintiff (doc. no. 26), ¶ 7.

[19] Defendant's evidentiary submission (doc. no. 21), Exhibit 15.

comply with said order.

. . .

    Defendant acted in bad faith and with retaliatory motives in continuing and further violation of Title VII and the final agency decision in plaintiff's favor.[20]

Plaintiff received a letter from the Postal Service EEO office on April 12, 2000,[21] purporting to dismiss the formal administrative complaint he had filed on March 9, 2000.  The letter stated:

    This will be the Postal Service's final agency decision on the above referenced complaint.... In that complaint, you alleged discrimination on the bases of race (Black) and retaliation (prior EEO complaint) in that you were terminated during your probationary period on December 30, 1999.

. . .

    A review of the record reflects that on February 1, 2000, you filed a civil action ... in the United States District Court ... concerning the same allegations raised in your EEO complaint. As the basis of your civil action and the issue in your administrative complaint are the same, your allegation pertaining to this matter is dismissed in accordance with [29 C.F.R. § 1614.107(a)(3)[22]].

Clearly, that letter was issued in error, because 29 C.F.R. § 1614.107(a)(3) states that an agency investigating complaints of discrimination may dismiss an administrative complaint that is the basis of a pending civil action in a United States District Court,

---

[20] Complaint (doc. no. 1) ¶¶ 1, 12.

[21] *See* Defendant's evidentiary submission (doc. no. 21), Exhibit 16.

[22] The agency improperly cited an outdated regulation in this letter: *i.e.*, 29 C.F.R. § 1614.107(c). The proper regulation, containing the same substantive provisions, is 29 C.F.R. § 1614.107(a)(3), which became effective on November 9, 1999.

<u>provided</u> that at least 180 days have passed since the filing of the complainant's administrative complaint.[23]  The error was recognized and corrected on May 8, 2000, when Postal Service EEO Office Manager Rafael Martorell mailed a letter to plaintiff stating: "This letter rescinds the final agency decision issued on April 12, 2000."[24]  Martorell subsequently explained his retraction in the following manner:

> The  [April 12, 2000] final agency decision dismissing [plaintiff's March 9, 2000 EEO complaint] was issued in error.  ...
>
> . . .
>
> After issuing the Final Agency Decision in Agency No. 4-H-350-0069-00, it came my attention that the administrative complaint should not have been dismissed because 180 days had not passed since the filing of the administrative complaint. As a result, I issued a letter of May 8, 2000 ... which rescinds the final agency decision of April 12, 2000, <u>and resume[d] the administrative processing of [plaintiff's complaint]</u>.[25]

---

[23] In pertinent part, 29 C.F.R. § 1614.107(a)(3) provides:

  (a)  Prior to a request for a hearing in a case, the agency shall dismiss an entire complaint:

     . . .

     (3)  That is the basis of a pending civil action in a United States District Court in which the complainant is a party provided that at least 180 days have passed since the filing of the administrative complaint, or that was the basis of a civil action decided by a United States District Court in which the complainant was a party. ...

[24] *Id.*, Exhibit 17 (recission letter of May 8, 2000). The letter states that it was sent in regard to plaintiff's complaint regarding his "termination during probation" and lists the date of the incident under consideration as occurring on December 30, 1999.

[25] *Id.*, Exhibit 18 (Martorell declaration) ¶¶ 4, 6 (emphasis supplied).

### III. DISCUSSION

**A.   Plaintiff's Remedies With Respect to the Final Agency Decision Dated April 19, 1999**

The Supreme Court held, in *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), that 42 U.S.C. § 2000e-16 "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Id.* at 835, 96 S.Ct. at 1969.  Indeed, until Title VII of the Civil Rights Act of 1964 was amended by § 717 of the Equal Employment Opportunity Act of 1972 (now codified as 42 U.S.C. § 2000e-16),

> Title VII did not protect federal employees.  42 U.S.C.
> § 2000e(b).  Although federal employment discrimination
> clearly violated both the Constitution, *Bolling v.
> Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954),
> and statutory law, 5 U.S.C. § 7151, before passage of the
> 1972 Act, the effective availability of either
> administrative or judicial relief was far from sure.
> Charges of racial discrimination were handled parochially
> within each federal agency.  ...

*Brown*, 425 U.S. at 825, 96 S.Ct. at 1964.

Subsection (a) of § 2000e-16 provides that all personnel actions affecting federal employees and applicants for federal employment "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-16(a) (Supp. 2000).  Subsections (b) and (c) of the same section "establish complementary administrative and judicial enforcement mechanisms designed to eradicate federal employment

discrimination." *Brown*, 425 U.S. at 831, 96 S.Ct. at 1967.

Subsection (b) delegates to the Equal Employment Opportunity Commission authority to enforce subsection (a) "through appropriate remedies, including reinstatement or hiring or employees with or without back pay," and also the power to "issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section." 42 U.S.C. § 2000e-16(b)[26]; *see also Brown*, 425 U.S. at 831-32, 96 S.Ct. at 1967.  One regulation promulgated by the EEOC pursuant to this statutory grant is 29 C.F.R. § 1614.402(a), providing that an aggrieved federal employee may appeal a final agency decision to the EEOC "within 30 days of the complainant's receipt of the ... final decision."[27]

---

[26] In the part here pertinent, 42 U.S.C. § 2000e-16(b) provides:

> Except as otherwise provided in this subsection, the Equal Employment Opportunity Commission shall have authority to enforce the provisions of subsection (a) of this section through appropriate remedies, including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of this section, and shall issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section.  ...

As another court in this Circuit observed, regulations promulgated by the EEOC pursuant to this section are not mere "technicalities, but are integral parts of Congress' statutory scheme of achieving a 'careful blend of administrative and judicial enforcement powers.'"  Thompson v. West, 883 F. Supp. 1502, 1507 (M.D. Ala. 1995) (quoting *Brown*, 425 U.S. at 833, 96 S.Ct. at 1968).

[27] In full text, 29 U.S.C. § 1614.402(a) provides:

> (a)  Except for mixed case complaints, any dismissal of a complaint or any final decision may be appealed to the Commission within 30 days of the complainant's receipt of the dismissal or final decision.  Any grievance decision may be appealed within 30 days of receipt of a decision referred to in § 1614.401(c).  In the

Subsection (c) provides that a federal employee who is not satisfied with the final agency decision also may file a civil action in district court, seeking judicial review of his or her employment discrimination claim.[28]   As the Supreme Court has observed, however, "certain preconditions" attach to the right of federal employees to file a civil action under that section.

> Section 717(c) [42 U.S.C. § 2000e-16(c)] permits an aggrieved employee to file a civil action in a federal district court to review his claim of employment discrimination.  Attached to that right, however, are certain preconditions.  Initially, the complainant must seek relief in the agency that has allegedly discriminated against him.  He then may seek further administrative review with the [EEOC[29]] or,

---

case of class complaints, any final decision received by an agent, petitioner or an individual claimant may be appealed to the Commission within 30 days of its receipt.  Where a complainant has notified the EEO Director of alleged noncompliance with a settlement agreement in accordance with § 1614.504, the complainant may file an appeal 35 days after service of the allegations of noncompliance, but must file an appeal within 30 days of receipt of an agency's determination.

[28]   42 U.S.C. § 2000e-16(c), pertaining to civil actions by federal employees or applicants for employment, provides in part:

> Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, ... or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit ... an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

[29]   As discussed in the immediately preceding textual paragraph and footnote, the appeal of a final agency decision to the EEOC must occur within 30 days of the aggrieved employee's receipt of the final agency decision. 29 C.F.R.

> alternatively, he may, within [90] days of receipt of
> notice of the agency's final decision, file suit in
> federal district court without appealing to the [EEOC].
> If he does appeal to the Commission, he may file suit
> within [90] days of the Commission's final decision.  In
> any event, the complainant may file a civil action if,
> after 180 days from the filing of the charge or the
> appeal, the agency or [EEOC] has not taken final action.

*Brown*, 425 U.S. at 832, 96 S.Ct. at 1967.

In sum, the various subsections of § 2000e-16 provide "a careful blend of administrative and judicial enforcement powers" grounded in "<u>rigorous</u> administrative exhaustion requirements and <u>time limitations</u>."  *Id.* at 833, 96 S.Ct. at 1968 (emphasis added).[30]

In the present case, plaintiff did not comply with either of the applicable time limitations:  he did not appeal to the EEOC within 30 days of his receipt of the Postal Service's April 19, 1999 final agency decision, as required by 29 C.F.R. § 1614.402(a); nor did he file an action in this court within 90 days of his receipt of that decision, as required by 42 U.S.C. § 2000e-16(c).

---

§ 1614.402(a).

[30] When read together, the various subsections of 42 U.S.C. § 2000e-16 make clear that a "federal employee must pursue and exhaust [his or] her administrative remedies as a jurisdictional prerequisite to filing a Title VII action."  *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999) (citing *Brown*, 425 U.S. at 832-33, 96 S.Ct. at 1967-68).

> Exhaustion of administrative remedies serves important
> policies.  The requirement that discrimination complaints first be
> presented to an agency rather than a court encourages informal,
> conciliation-oriented resolution of disputes and reduces the burden
> on federal courts.... It is also "particularly important that the
> agency develop a record and have the opportunity to exercise its
> discretion, to apply its expertise, and possibly, to discover and
> correct its own errors."

*Sampson v. Civiletti*, 632 F.2d 860, 862-863 (10th Cir. 1980) (citations omitted).

Plaintiff's derelictions are underscored by the fact that he was specifically informed of those time limitations in the final agency decision.[31]  Even so, plaintiff, speaking through his attorney, informed defendant that he did "not intend to appeal and would like to report to work as soon as possible."[32]

Despite these undisputed facts, plaintiff now argues that this court should invoke principles of equitable tolling to excuse his failure to comply with the 90 day filing requirement of § 2000e-16(c), due to "defendant's act of bad faith in misleading plaintiff as to the meaning of the word 'probationary' as it is used in the April 19, 1999 [final agency decision]."[33]

The Supreme Court held, in *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), that "the same rebuttable presumption of equitable tolling applicable to [Title VII] suits against private defendants should also apply to suits against the United States" or its various departments, agencies, or units under § 2000e-16(c).  *Id.* at 95-95, 111 S.Ct. at 457.  Even in the private sector, however, "courts have typically extended equitable relief only sparingly."  *Id.* at 96, 111 S.Ct. at 457.  Moreover, "[b]ecause the time limits imposed by Congress in a suit against the Government involve a waiver of sovereign

---

[31] See the text at note 11 *supra* (notice of appeal procedures contained in April 19, 1999 final agency decision).

[32] *Id.*, Exhibit 6 (Pearson letter).

[33] Plaintiff's memorandum in opposition (doc. no. 27), at 11.

18

immunity, it is evident that no more favorable tolling doctrine may be employed against the Government than is employed in suits between private litigants." *Id.* at 96, 111 S.Ct. at 458; *see also id.* at 94, 111 S.Ct. at 456 ("§ 2000e-16(c) is a condition to the waiver of sovereign immunity and thus must be strictly construed."); *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980) ("In the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.").

Plaintiff contends that he did not understand how defendant defined the term "probationary" as used in the April 19, 1999 final agency decision until December 30, 1999, the date of his second termination.   Plaintiff argues that, until that action, he understood the term as being "only for the purpose of providing me with training during the 'probationary' period so I could learn the new routes that I would be carrying at the end of 'probationary' training period."[34]

Plaintiff's interpretation is patently unreasonable.   The probationary requirement is plainly expressed in the April 19, 1999 Final Agency Decision:   "You will be <u>required</u> to <u>satisfactorily complete</u> a <u>probationary period</u> under management other than the

---

[34] Plaintiff's declaration (doc. no. 26), ¶ 4.

supervisors cited in this complaint."[35]    The language of this simple, declarative sentence is clear, and should not require explication.

Other than self-serving, conclusory assertions that defendant, in bad faith, "beguiled" plaintiff into accepting the terms of the April 19th final agency decision, plaintiff offers no evidence suggesting that equitable tolling is justified.    The procedural requirements established by Congress "are not to be disregarded out of a vague sympathy for particular litigants." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984).

> ### 1.    Plaintiff's administrative remedies with respect to defendant's alleged failure to comply with the final agency decision

The administrative remedies available to a plaintiff who believes that a federal agency has failed to comply with the terms of a final decision are addressed in 29 C.F.R. § 1614.504, providing in part:

> If the complainant believes that the agency has failed to comply with the terms of a ... final decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. ...

29 C.F.R. § 1614.504(a) (emphasis supplied).    Plaintiff did not

---

[35] Defendant's evidentiary submission (doc. no. 21), Exhibit 2 (April 19, 1999 final agency decision) (emphasis added).

comply with these requirements either.   The parties have not pointed out, nor has the court uncovered, any Eleventh Circuit precedent specifically holding that an aggrieved federal employee's failure to comply with the written complaint requirement and time limitation of 29 C.F.R. § 1614.504(a) deprives this court of jurisdiction.   Even so, other courts have concluded that full compliance with § 1614.504(a) is a jurisdictional prerequisite. *See, e.g., Sanders v. Reno*, 186 F.3d 684, 685 (5th Cir. 1999) (federal employee seeking enforcement of final agency decision must exhaust remedies under § 1614.504(a) prior to bringing a civil action, and failure to do so leaves the court without jurisdiction to hear the case); *Davis v. Secretary of the Treasury, Internal Revenue Service*, 896 F. Supp. 978, 981 (N.D. Cal. 1995) (same).[36] This court is persuaded by such authorities that it lacks jurisdiction to hear plaintiff's complaint regarding defendant's alleged noncompliance with the terms of the April 19, 1999 final agency decision.   Accordingly, that claim is due to be dismissed.

---

[36] On this issue plaintiff argues that the Eleventh Circuit has found that subject matter jurisdiction over "negotiated settlement agreements" is conferred by Title VII itself.  Plaintiff proceeds to point to several cases reinforcing that point.   The cases cited, however, all involve compliance with negotiated settlement agreements and not final agency decisions.   There is a significant difference.  Final agency decisions are the result of an adversarial process, in which no rights are given up by either party.   Settlement agreements, on the other hand, are the result of negotiation, which may result in the release of certain rights by a party.

**B.   Plaintiff's Remedies With Respect to the Second Termination of His Employment**

This action was filed on February 1, 2000: *that is*, 33 days after plaintiff's second termination of employment (December 30, 1999); 5 days after plaintiff initiated a second EEO complaint process (January 27, 2000);[37] 37 days before plaintiff filed his formal administrative complaint with the EEO Complaints Processing office (March 9, 2000);[38] and, 71 days before the Postal Service erroneously issued a letter dismissing plaintiff's March 9, 2000 retaliation charge (April 12, 2000) — an action that was rescinded on May 8, 2000.[39]   This action is premature.   42 U.S.C. § 2000e-16(c) provides that "after one hundred and eighty days from the filing of the initial charge with the ... agency, ... an employee ... may file a civil action...."   Further, 29 C.F.R. § 1614.407 provides that:

> A complainant who has filed an individual complaint ... is authorized under Title VII ... to file a civil action in an appropriate United States District Court:
>
> . . .
>
> (b)   After 180 days from the date of filing an individual ... complaint if an appeal has not been filed and final action has not been taken.

Other courts have found that a federal employee may not

---

[37] See discussion of "Information on Precomplaint" form submitted by plaintiff on January 27, 2000, at note 19 *supra*.

[38] See discussion at note 20 *supra*.

[39] See the discussion at notes 21 – 25 *supra*.

abandon the administrative process by filing suit before the 180 day administrative investigation and conciliation period has expired. *See, e.g., Askew v. Stone* 1996 WL 135024, at *3 (6th Cir. March 25, 1996) (a plaintiff's abandonment of the administrative process prior to the expiration of 180 days and her failure to file a formal agency complaint prior to filing suit in district court deprived the district court of jurisdiction over the subject matter of plaintiff's suit); *Tolbert v. United States*, 916 F.2d 245, 248 (5th Cir. 1990) ("[A]nyone who files too early, has, by definition, filed before she has exhausted her administrative remedies.... [T]hus, the court had no jurisdiction over the action, and was required to dismiss it."); *Rivera v. United States Postal Service*, 830 F.2d 1037, 1039 (9th Cir. 1987) ("[O]nce a party appeals to a statutory agency, board or commission, the appeal must be 'exhausted.' To withdraw is to abandon one's claim, to fail to exhaust one's remedies. Impatience with the agency does not justify immediate resort to the courts."), *abrogated on other grounds by Bak v. Postal Service (U.S.),* 52 F.3d 241 (9th Cir. 1995); *Thompson v. West*, 883 F. Supp 1502, 1508 (M.D. Ala. 1995) ("To withdraw from the administrative process in order to file suit ... constitutes a failure to exhaust administrative remedies.").

The defect of a premature filing may not be cured by subsequent events, such as the issuance of a decision by the EEOC

prior to the district court's dismissal of the complaint.  As the

Fifth Circuit explained:

> To hold otherwise would allow a plaintiff to file an
> action and begin civil proceedings — discovery, motions
> to dismiss and for summary judgment, and so on — before
> completing the course of administrative review.   A
> plaintiff could thereby largely circumvent the rule that
> she must exhaust her administrative remedies.  To allow
> a plaintiff to proceed in such a fashion would, in short
> sequence, produce all of the evils that are designed to
> be avoided by requiring exhaustion of administrative
> remedies. ...
>
> ... The rule is simple:  file in the time allotted, and
> neither before nor after.  ...

*Tolbert*, 916 F.2d at 249.

Plaintiff first attempts to justify his short-circuiting of

the administrative process by arguing that, under 29 C.F.R. §

1614.606, when two complaints are filed by the same complainant,

joint processing of the complaints is allowed and the date of the

first filed complaint controls the applicable time limitations

(*i.e.*, time to file suit).  If that were true, then plaintiff's

present action would have been instituted after the required 180

day period, as plaintiff's first administrative complaint was filed

in May of 1995.  Unfortunately, however, plaintiff relies upon an

outdated regulation.  Prior to November 9, 1999, 29 C.F.R. §

1614.606 read, in pertinent part, as follows:

> [T]wo or complaints of discrimination from the same
> complainant may be consolidated by the agency ... for
> joint processing after appropriate notification to the

24

> parties.  <u>The date of the first filed complaint controls
> the applicable timeframes under subpart A of this part</u>.
> [Emphasis added.]

Section 1614.606 now provides, in pertinent part:

> Two or more complaints of discrimination filed by the
> same complainant shall be consolidated for joint
> processing after <u>appropriate notification</u> to the
> complainant.  When a complaint has been consolidated with
> one or more earlier filed complaints, the agency shall
> complete its investigation within the earlier of 180 days
> after the filing of the last complaint or 360 days after
> the filing of the original complaint, except that the
> complainant may request a hearing from an administrative
> judge on the consolidated complaints any time after 180
> days from the date of the first filed complaint.
> Administrative judges or the Commission may, in their
> discretion, consolidate two or more complaints of
> discrimination filed by the same complainant. [Emphasis
> added.]

Notably absent in the current regulation is the prior provision

expressly stating that the date of the first filed complaint is the

event controlling applicable time limitations.   Moreover, the

evidence does not establish that <u>any</u> notification was given to

plaintiff regarding a consolidation of his complaints.  Therefore,

on this point, plaintiff's argument is without merit.

The second rationalization offered by plaintiff for his

bypassing of the administrative process is the argument that, under

Eleventh Circuit precedent, a plaintiff is not required to exhaust

administrative remedies prior to asserting a retaliation claim that

grows out of an earlier discrimination charge.[40]   As support for

---

[40] Plaintiff's memorandum in opposition (doc. no. 27), at 12.

25

this proposition, plaintiff cites *Baker v. Buckeye Cellulose Corp.*,
856 F.2d 167 (11th Cir. 1988).  In *Baker*, the plaintiff had filed
an EEOC charge alleging discrimination on the basis of her race.
After the EEOC issued a notice of the plaintiff's right to sue, she
filed a civil action.  "Her complaint had been pending for four
months in the district court when she filed a motion for a
preliminary injunction, seeking to enjoin certain alleged
retaliatory actions taken by Buckeye as a result of her filing
suit."  *Id.* at 168.  The employer argued that the district court
did not have jurisdiction over the motion because the plaintiff

> had not asserted the retaliation claim either before the
> EEOC or in her complaint.  Under Buckeye's theory, Baker
> would have to file a new charge with the EEOC alleging
> retaliatory actions, obtain a right-to-sue letter, and
> either file a new complaint in the district court or
> amend the complaint in the pending case.

*Id.*  The Eleventh Circuit disagreed, saying

> it is unnecessary for a plaintiff to exhaust
> administrative remedies prior to urging a retaliation
> claim growing out of an earlier charge; the district
> court has ancillary jurisdiction to hear such a claim
> when it grows out of an administrative charge that is
> properly before the court.

> There are strong practical reasons and policy
> justification for this conclusion.  It is the nature of
> retaliation claims that they arise after the filing of
> the EEOC charge.  Requiring prior resort to the EEOC
> would mean that two charges would have to be filed in a
> retaliation case — a double filing that would serve no
> purpose except to create additional procedural
> technicalities when a single filing would comply with the
> intent of Title VII.

26

*Id.* at 169 (quoting *Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir. 1981)[41]).

The issue presented here is whether there is a charge "properly before the court" to which plaintiff's retaliation claim may attach.  Plaintiff argues that his prior EEO charge (which was resolved with the issuance of the final agency decision dated April 19, 1999) is properly before this court, because he "exhausted all required administrative remedies with regard to that charge."[42]

As discussed in Part A of this opinion, however, plaintiff's prior EEO charge is <u>not</u> properly before this court, due to plaintiff's failure to properly appeal the issuance of that Final Agency Decision (pursuant to 29 C.F.R. § 1614.402(a)), properly file a civil action in the authorized time period (pursuant to 42 U.S.C. § 1600e-16(c)), or properly follow administrative requirements when plaintiff became convinced that the April 1999 Final Agency Decision was not being complied with (pursuant to 29 C.F.R. § 1614.504(a)).  Therefore, there is no viable claim to which his retaliation claim may attach.

Accordingly, defendant is entitled to summary judgment.  *Cf.* *Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 762 (11th Cir. 1995) (because underlying age discrimination claim was untimely, court

---

[41] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[42] *Id.* at 13.

did not abuse its discretion in denying retaliation amendment); *see also Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 479 (5th Cir. 1991) (because one of plaintiff's ADEA claims was untimely and the other had not been presented to the EEOC, the claims were not properly before the court and retaliation claim had "no charge on which to attach itself," thus, rendering the court without jurisdiction over retaliation claim); *Wilson v. Shell Oil Company*, 1995 WL 311911, at *4 (E.D. La. May 18, 1995) (holding that plaintiff had no viable discrimination claim properly before the court to which his subsequent retaliation claim could attach).

### V. CONCLUSION

For the foregoing reasons, this court concludes that defendant's motion to dismiss (doc. no. 19), which has been considered as a motion for summary judgment, is due to be granted with respect to all of plaintiff's claims. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this _8th_ day of December, 200).

_____
United States District Judge

28